UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE A. MONATERI, | ) | Case No. 1:08-CV-01297 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Christine A. Monateri filed this appeal seeking judicial reversal under 42 U.S.C. §405(g) from the administrative denial of disability insurance benefits. At issue is the ALJ's decision dated May 25, 2007, [1] which stands as the final decision of the Commissioner. *See* 20 C.F.R. §404.1481. The parties consented to the jurisdiction of the Magistrate Judge for all further proceedings including

---

[1] Ms. Monateri initially applied for Disability Insurance Benefits on July 11, 2000, and was denied on October 31, 2000. (Docket #22 at 1). Ms. Monateri did not appeal the denial. *Id.* Ms. Monateri filed her next application on May 8, 2001, alleging that she has been disabled since November 21, 1999. *Id.* This application was also denied. (*Id.* at 2). Ms. Monateri appealed this denial on February 14, 2002, and requested a de novo hearing before an ALJ. (Docket #19 at 1). The hearing took place on July 15, 2003, and benefits were denied by decision dated November 19, 2003, "finding at step 5 of the sequential evaluation that Monateri could perform work that exists in significant numbers in the national economy." (*Id.* at 2). Ms. Monateri appealed this decision to the Appeals Council and then to the United States District Court. *Id.* On November 1, 2005, the parties "filed a joint stipulation to remand the case for further action under sentence 4 of the Social Security Act." *Id.* Magistrate Judge William Baughman, Jr., entered judgment remanding the case for a new hearing and decision and to "make specific findings with regard to the four broad areas of mental functioning set forth in the regulations in accordance with 'the technique' required by 20 C.F.R. §404.1520a [and] to obtain testimony from a Vocational Expert with regard to the claimant's limitations on her ability to perform jobs existing in significant numbers in the economy." (Tr. 329-30). A hearing was held on April 11, 2007, before a different ALJ (Docket #22 at 3), which resulted in the May 25, 2007 decision at issue in this appeal.

entry of judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.

Ms. Monateri was 53 years of age at the time of the administrative decision. Ms. Monateri alleges that she stopped working in November of 1999, due to relapse after a mental breakdown that occurred in February of 1999. (Tr. 251, 521-522,524). Ms. Monateri alleges that she suffers from panic attacks, anxiety, and depression and has problems concentrating. (Tr. 252-53). Except for a period between September 2004, and March 2005, during which she worked full-time as a bookkeeper for Cintas, Ms. Monateri alleges that she has been unable to work due to her mental impairments since 1999. (Tr. 530-31, 540, 548-49). Ms. Monateri states that she was terminated from Cintas after she suffered a mental breakdown for which she was hospitalized due to depression, suicidal thoughts, and an addiction to Oxycontin. (Tr. 532-33, 539).

After administrative hearing and *de novo* review, an ALJ, acknowledged Ms. Monateri's mental impairments and polysubstance dependence, as well as a history of alcohol abuse in remission, and determined that, "independent of considerations of substance abuse, the claimant has the residual functional capacity perform simple, routine work" (Tr. 319) and that considering Ms. Monateri's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 322). The ALJ also noted that, "the medical evidence establishes that the claimant would not be disabled if she stopped using drugs and/or alcohol" and therefore, is "ineligible for payments under Title II and Title XVI of the Social Security Act" in accordance with Pub.L. 104-121. (Tr. 323).

### I.      STANDARD OF REVIEW

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision. Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

### II.     SEQUENTIAL EVALUATION/MEETING OR EQUALING LISTING OF IMPAIRMENTS

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment. *See* §404.1520(a)(4)(I) and (ii) and §416.920(a)(4)(I) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1. *See* 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden

4

to show that [he] is unable to perform her previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sect'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

### A.     **Treating Physician**

Ms. Monateri first alleges that the ALJ's decision is not supported by substantial evidence and violates applicable law because "[t]he ALJ violated the treating physician rule." Specifically, Ms. Monateri asserts that "[t]he ALJ ignored or rejected critical opinion evidence from her treating psychiatrists at Pathways, Dr. Svete and Dr. Bertschinger[,] * * * misinterpreted medical evidence that corroborated the opinions of Dr. Svete and Dr. Bertschinger[,] and *** failed to give *good reasons* for failing to give controlling or deferential treatment to Monateri's treating physician's opinions." [2]  (Emphasis sic). (Docket #19 at 7).

In determining the question of substantiality of the evidence, reports of physicians who have provided treatment over a long period of time are entitled to greater weight than the reports of physicians employed by the government for the purpose of defending against a claim for disability. *See* 20 C.F.R. §404.1527(d)(2); §416.927(d)(2).; 20 C.F.R. §404.1527(d)(3); §416.927(d)(3). This

---

[2] It should be initially noted that Ms. Monateri failed to list Drs. Bertschinger or Dr. Svete as treating physicians on her Fact Sheet (Docket #18) as required by the Court's Order dated August 21, 2008.  (Docket #6).

5

is commonly known as the "treating physician rule." *See Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *Wilson* v. *Commissioner of Soc. Sec.*, 378 F.3d 541, 544(6th Cir. 2004). The ALJ must give the opinion from the treating source controlling weight if she finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544, *quoting* 20 C.F.R. §404.1527(d)(2) and §416.927(d)(2).

        1.      Dr. Bertschinger

Dr. Bertschinger opined on June 28, 2000, that Ms. Monateri was unemployable and would remain that way for "between 9 months and 11 months." 42 U.S.C. §423(d)(1)(A) defines a disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Dr. Bertschinger did not opine that Ms. Monateri could not work for at least the requisite 12 months. A "failure to provide good reasons for rejecting a treating physician's opinion does not require remand if the error is de minimis." *Mickens v. Astrue*, 2008 WL 5501145 (N.D. Ohio Sept. 26, 2008) (M.J. Limbert), *citing Wilson, supra.* Here, the ALJ's failure to include a sentence explaining that he did not consider Dr. Bertschinger's opinion because the opinion would not entitle Ms. Monateri to benefits under 42 U.S.C.(d)(1)(A) was de minimis.

Ms. Monateri also alleges that the ALJ misstated the record when he determined that the treatment notes reveal "no significant problems." (Docket #19 at 8). Ms. Monateri alleges that he treatment notes from 6/22/00 to 11/15/01 reveal that Ms. Monateri had significant symptoms. (*Id.*, *citing* Tr. 156-175). Included among these treatment notes are notes indicating that: (1) Ms.

Monateri was suffering from "panic disorder, generalized anxiety disorder, major depressive disorder"; (2) had mild panic attacks; and that (3) "significant symptoms continued to be noted"; and (4) "response to treatment was *** 'fair' or 'partial' *** [and] that she was 'doing ok but not great.'" *Id.*

It is initially noted that the signatures on many of the notes are illegible and, in some cases, do not appear to belong to Dr. Bertschinger. Regardless, medical notes are not "medical opinions" for purposes of 20 C.F.R. §404.1527(a)(2). A "medical opinion" is a term of art in the social security disability context and, as defined under 20 C.F.R. §404.1527(a)(2), medical opinions are opinions about the nature and severity of the individual's impairments. *See* SSR 96-5p; *Kisner v. Astrue*, 2008 WL 215598 at *18 (N.D. W. Va.). *See also Martin v. Astrue*, 2008 WL 3983830 (S.D. Ohio)(finding that the treating physician rule does not apply to a physician's note that claimant is not to be on her feet more than 15 minutes at a time because such is not a formal opinion regarding an ongoing limitation); *Christian v. Astrue*, 2008 WL 4056356 (S.D. Ohio)(noting that claimant's treating physicians offered "no opinion as to her limitations"); *Lewis v. Astrue*, 2008 4186235 (S.D. Ohio)(noting that the exhibits submitted by Plaintiff contain no equivalence opinion from any treating physician).

Dr. Bertschinger's notes about Ms. Monateri's treatment sessions do not pertain to the doctor's judgment. To constitute "medical opinion," the statement must "reflect judgment about the nature and severity of the impairments.' *See* 20 C.F.R. §404.1527(a)(2). Hence, the regulatory requirements to weigh and "give good reasons" for the weight given the medical opinion do not apply here. *Compare,* 20 C.F.R. §1527(d)(2); *Wilson*, *supra,* at 544.

7

2.  Dr. Svete

Ms. Monateri asserts that the ALJ "did not address Dr. Svete's assessments of 6/11/03 (Tr. 211-12) and 12/18/06 (Tr. 470) of Ms. Monateri's ability to do work-related activities, and the ALJ states that he agrees with those assessment 'but only with the inclusion of the factor of substance abuse.'" (Docket 19 at 8, *quoting* Tr. 318). Ms. Monateri also maintains that the ALJ's "reasons for rejecting Dr. Svete's opinions are not supported by the evidence in the record, and therefore are not 'good reasons.'" (*Id.* at 9).

In his June 11, 2003 opinion, Dr. Svete stated that Ms. Monateri had marked impairments in her abilities to do work-related activities in seven areas and moderate impairment in seven areas. (Tr. 211-12). The opinion made no reference to Ms. Monateri's substance abuse problems because Ms. Monateri had not informed Dr. Svete of her drug use prior to the date of the opinion. (Tr. 450). Ms. Monateri did not inform Dr. Svete that she had been using opiates until January 2004. (Tr. 321, 448, 450; Docket #19 at 10 ). On December 18, 2006, however, Dr. Svete reaffirmed his 6/11/03 assessment of Ms. Monateri's ability to do work-related activities. (Tr. 450). The ALJ agreed with Dr. Svete's assessments, "but only with the inclusion of the factor of substance abuse." (Tr. 318).

Pursuant to the amendment of 42 U.S.C. §423(d)(2)(C) under the Contract with America Advancement Act (CAAA), "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Sections 20 C.F.R. 20 C.F.R. §§404.1535 and 416.935 implement the provision setting out the following procedure:

> **How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.**

(a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.

(1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

(I) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.
20 C.F.R. §§404.1535 and 416.935.

Under this procedure, the ALJ must consider all evidence in determining whether claimant is disabled. Then the "key factor" under the regulations is whether the Commissioner would still find the claimant disabled if he stopped using drugs or alcohol. If the claimant's remaining limitations would still be disabling, then drug and alcohol addiction would not be a contributing factor. The burden is on the claimant to prove that drugs and alcohol are not contributing factors material to the disability determination. See *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007), and cases cited therein. The ALJ applied the correct procedure to determine whether,"independent of considerations of substance abuse," Ms. Monateri has "an impairment or combination of impairments that meets or medically equals one of the listed impairments[.]" (Tr. 318).

9

As previously noted, Dr. Svete was unaware of Ms. Monateri's substance abuse problem when he rendered his June 11, 2003 opinion. Because it is Ms. Monateri's burden to establish that her substance abuse was not a contributing factor to her limitations, the ALJ provided a good reason for rejecting Dr. Svete's 6/11/03 opinion, which did not consider the substance abuse issue.

As to Dr. Svete's December 18, 2006 opinion, which reaffirmed his June 11, 2003 opinion, the ALJ adopted the Medical Expert psychiatrist's "opinion of the claimant's residual functional capacity (apart from substance abuse) as consistent with the objective medical evidence and the lack of full credibility of the claimant's testimony." (Tr. 321). The ALJ determined that "the degree of the claimant's alleged limitations or restrictions described by Dr. Svete is not supported by sufficient corroborative medical evidence independent of considerations of substance abuse" and his opinion, therefore, is "not entitled to either controlling weight or special deference, except insofar as he is describing how severely the claimant is limited when abusing medication." (Tr. 321).

Dr. Spring (the Medical Expert psychiatrist) testified that he reviewed Ms. Monateri's medical records and found them to be "a fairly complete record of treatment." Dr. Spring opined that Ms. Monateri does not "meet or equal the listings" except "at points *** when she was abusing drugs." (Tr. 570). Dr. Spring stated that Ms. Monateri's symptoms of depression and anxiety increase from the use of drugs. (Tr. 571). Dr. Spring acknowledged Dr. Svete's opinion that Ms. Monateri suffered from a 12.04 depressive disorder but opined that excluding the use of drugs, Ms. Monateri would not meet this listing level. *Id.* Dr. Spring considered the 12.09(B) criteria and determined that while using drugs in a way that was not prescribed, Ms. Monateri would have marked limitations in social functioning, concentration, persistence, pace, ability to participate in activities of daily living, and would have repeated episodes of decompensation. (Tr. 572-73). Without the use of drugs in this manner, Ms. Montaeri would have mild to moderate restrictions in

her ability to participate in activities of daily living, moderate difficulties in maintaining social functioning, concentration, persistence, or pace, and only one or two episodes of decompensation. (Tr. 573). Dr. Spring also testified that Ms. Monateri did not meet the "C" criteria of a 12.04 listing. Dr. Spring finally opined as to Ms. Monateri's residual functioning capacity if she was not using illegal drugs or drugs in excess of the prescribed level. (Tr. 573). Dr. Spring stated that Ms. Monateri would be able to "do simple, low stress with work with no quotas, *** no conflict resolution[,]" and low stress interaction with co-workers. (Tr. 573-74).

Based upon a review of the record, including Dr. Svete's treatment notes and Nurse Proehl's notes, including those specifically referenced by Ms. Monateri in her statement of errors, substantial evidence exists to support the ALJ's decision to accept Dr. Spring's opinion and reject Dr. Svete's December 18, 2003 opinion. Moreover, the ALJ properly explained his reasoning for so doing.

### B.    Credibility Assessment

Ms. Monateri next alleges that the ALJ erred when he found her not to be credible.

Subjective complaints can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 150-51 (6th Cir.1990); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 852 (6th Cir.1986). An ALJ is not required, however, to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability. *See Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997). "Upon judicial review, the court must accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which the court does not, of observing a witness's demeanor while testifying." *Walczak v. Commissioner of Social Sec.,* 2005

11

WL 474539 (N.D. Ohio 2005) (Armstrong, J.), *citing Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir.2003), *citing Walters*, 127 F.3d. at 528.. "The court is limited to evaluating whether the ALJ's explanations for partially discrediting the claimant are reasonable and supported by substantial evidence in the record. *Id*.

SSR 96-7p outlines the administrative evaluation process beginning with traditional two-prong *Duncan* pain analysis plus the additional regulatory considerations under 20 C.F.R. §404.1529(c)(3) and §416.929(c)(3). *See Duncan v. Sec'y of Health & Human Services*, 801 F.2d 847, 853 (6thCir. 1986); *Rogers*, 486 F.3d at 247.

Under the two-prong pain analysis, there first must be a determination whether there exists an underlying medically determinable physical or mental impairment followed by the question whether the impairment would be reasonably expected to produce the individual's pain or other symptoms. SSR 96-7p, 1996 WL 374186 at *2. The second question then is the reasonableness of the alleged debilitating pain or symptoms. The mandated considerations require the ALJ to investigate subjective complaints of pain or other symptoms based on:

1. The claimant's daily activities;

2. The location, duration, frequency, and intensity of pain;

3. Precipitating and aggravating factors;

4. The type, dosage, effectiveness, and side-effects of medication to alleviate pain or other symptoms;

5. Treatment, other than medication claimant has received for relief of pain; and

6. Any other measures used to relieve pain (e.g. lying down or changing position).

7. Other factors concerning functional limitations and restrictions due to pain or other symptoms.

12

*See* SSR 96-7p, 1996 WL 374186 at *2; 20 C.F.R. §404.1529(c)(3)(i-vii); §416.929(c)(3)(i-vii).

Here, the ALJ provided a recitation of Ms. Monateri's symptoms and then stated:

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce certain symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible.

(Tr. 320).

The ALJ explained his reasoning by noting that: (1) Ms. Monateri "had a number of admissions and crises related to the need for detox and substance abuse; (2) that Ms. Monateri's "impairments have not otherwise required acute inpatient or outpatient emergency care and treatment during the period under review in this decision; (3) by her own admission, Ms. Monateri was able to work when she was free from substance abuse; and (4) the "medical records do not corroborate [Ms. Monateri's] allegations of symptoms attributed to her impairments to an extent that would preclude the performance of work within the limitations identified above, independent of considerations of substance abuse." (Tr. 320-21).

The ALJ cited various portions of the record, including treatment notes of Dr. Svete, Dr. Spring, and Nurse Proehl, and addressed Ms. Montaeri's treatment history, daily activities, use of medication and its side effects, and her functional limitations. (Tr. 319-21). An ALJ need not refer specifically to Social Security Rulings. *McClanahan v. Comm'r of Soc. Sec*. 474 F.3d 830, 835 (6th Cir. 2006). What matters is whether the ALJ conducts the analysis required by the rulings. *Id.* The ALJ's reasoning demonstrates that he conducted the proper analysis and his decision is "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248, *citing Hurst v. Secretary of Health & Human Services*, 753 F.2d 517, 519 (6th Cir.1985).

13

Because the ALJ properly articulated his reasons for rejecting plaintiff's subjective claims regarding her limitations, and because the AL''s reasons are supported by the record, the ALJ's finding on credibility is entitled to deference. *See Walczak, supra; Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993) (per curiam); *see also Hardaway v. Secretary of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir.1987) (per curiam); *Houston v. Secretary of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir.1984). Accordingly, the ALJ's assessment of Ms. Monateri's credibility, conducted in accordance with administrative regulatory procedures, was supported by substantial evidence.

### C.  Vocational Expert's Opinion

Ms. Monateri finally argues that the ALJ erred when he relied upon the testimony of a vocational expert ("VE") to determine that Ms. Monateri has the residual functional capacity to "perform simple, routine work without high production quotas or piecework, involving superficial interactions with co-workers and the public without negotiation or confrontation." (Tr. 319). Specifically, Ms. Monateri alleges that a person with a restriction to simple tasks "cannot perform all unskilled work." (Docket #19 at 19). Ms. Monateri asserts that because "the ALJ found that [she] is limited to simple routine tasks, it follows that she would be limited to performing only those jobs in the DOT indicated with a reasoning level of 1" from Appendix C to the Dictionary of Occupational Titles, 4th Ed. (1991). (*Id.* at 20). The positions of mail clerk and kitchen helper require a reasoning level of 2, and cashier II a reasoning level of 3. (Tr. 286-88). Therefore, according to Ms. Monateri, the VE's testimony conflicts with the DOT and the ALJ was not entitled to rely upon it without clarification. (Docket #19 at 20).

14

A VE's opinion cannot constitute substantial evidence unless the expert <u>precisely</u> considers the particular physical and mental impairments affecting claimant. *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987); *McMillan v. Schweiker*, 697 F.2d 215, 221 (8th Cir. 1983); *Howard v. Commissioner*, 276 F.3d 235, 239 (6th Cir. 2002). However, the ALJ is not required to propound a hypothetical question accepting all claimant's allegations as credible. *Varley*, 820 F.2d at 780. Rather the hypothetical question must be based upon factual assumptions supported by substantial evidence from the record. *Id.*

> The following exchange took place between the ALJ and the VE:
>
> Q. [C]onsider a 46-year-old individual with a high school education that does not have any exertional limitations but has the following non-exertional limitations. This person would be limited to simple, routine work. They could not perform high production quota work or piece work. And they could have superficial interaction with co-workers and the public without negotiation or confrontation. *** Would there be jobs in the national, local, or regional economy that such a worker could perform?
>
> A. Yes.

(Tr. 586).

The VE then testified that Ms. Monateri could perform as a kitchen helper, mail clerk or cashier II and that such jobs existed in significant numbers in the national, local, or regional economy. (Tr. 587). The VE then stated that her testimony about these positions was consistent with the DOT. *Id.* The hypothetical posed was supported by substantial evidence in the record and the answers given by the VE, therefore, constitute substantial evidence.

Regarding the reasoning levels of the occupations identified by the VE and the alleged conflict with the DOT, "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to

15

rely on the Dictionary's classifications." *Wright v. Massanari*, 321 F.3d 611, (6th Cir. 2003), *citing Conn v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th Cir.1995), *citing* 20 C.F.R. §404.1566(d).

"Conflicts between the VE's testimony and the DOT's job classifications, however, implicate Social Security Ruling 00-4p," which calls on the ALJ to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles." *Pena v. Commissioner of Social Sec.*, 2008 WL 3200253 (N.D. Ohio 2008) (Carr, J.), *quoting* SSR 00-4p (Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions). Ruling 00-4p requires the ALJ to "[a]sk the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT." *Id.* "Nevertheless, if the VE does not identify any such conflict, courts have found that the Commissioner has no responsibility to identify or resolve a conflict that is not otherwise apparent." *Pena*, *supra*. *See also Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir.2004); *Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir.2002) (requiring "an explanation only if the discrepancy was 'identified'-that is, if the claimant (or the ALJ on his behalf) noticed the conflict and asked for substantiation").

In this case, the ALJ asked the VE if her testimony was consistent with the DOT and she confirmed that it was. Because Ms. Monateri's lawyer "did not question the basis for the vocational expert's testimony ... any objection to it is forfeited." *Barrett,* 355 F.3d at 1067; *see also Conn*, 512 F.3d at 610. Ms. Monateri has therefore failed to show that the ALJ erred in evaluating the testimony of the vocational expert.

**III.**     **CONCLUSION**

16

The issues before this Court must be resolved under the standard of whether the determination is supported by substantial evidence of record. "Under 42 U.S.C. §405(g), the ALJ's findings are conclusive as long as they are supported by substantial evidence." *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 851 (6th Cir. 1986)(stating that this court's review "is limited to determining whether there is substantial evidence in the record to support the findings"); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Based on the arguments presented, the record in this matter, the applicable law, and for the foregoing reasons the ALJ's decision is supported by substantial evidence and the decision will be affirmed.

IT IS SO ORDERED.

    /s/James S. Gallas  
United States Magistrate Judge

Dated: September, 10, 2009